**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jimi Lee Jarvis, | No. CV-22-00914-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Jimi Lee Jarvis ("Plaintiff") challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 12), the Commissioner's answering brief (Doc. 13), and Plaintiff's reply (Doc. 14), as well as the Administrative Record (Doc. 11, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.   Procedural History

Plaintiff first filed an application for benefits on November 22, 2013, alleging disability beginning on June 1, 2011. (AR at 113.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels. (*Id.*) On November 16, 2016, following an in-person hearing, the ALJ issued an unfavorable decision. (*Id.* at 110-24.) The Appeals Council later denied review. (*Id.* at 131-36.)

Plaintiff filed a second application for benefits on January 17, 2019, again alleging disability beginning on July 1, 2011. (*Id.* at 15.) SSA denied Plaintiff's application at the

initial and reconsideration levels. (*Id.*) On May 26, 2021, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 15-28.) The Appeals Council later denied review. (*Id.* at 2-7.)

II. <u>Sequential Evaluation Process And Judicial Review</u>

When a claimant has filed multiple applications for disability, the ALJ must first conduct a *res judicata* analysis under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). "The principles of *res judicata* apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Id.* at 693 (citation omitted). "The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Id.* (citation omitted). A claimant can prove changed circumstances by "present[ing] any new [and] material evidence warranting a change in [claimant's] residual functional capacity." *Argueta v. Colvin*, 621 F. App'x 464, 465 (9th Cir. 2015); *Chavez*, 844 F.2d at 694.

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national

economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. The ALJ's Decision

Before engaging in the five-step process, the ALJ concluded that Plaintiff had "rebutted the presumption of continuing non-disability" under *Chavez* because "[t]he record includes new evidence submitted after the prior ALJ decision that is material to the severity of the claimant's medically determinable impairments and results in a finding different from the finding made in the prior decision." (AR at 16.) Specifically, the ALJ found changed circumstances existed because of "an alleged worsening of [Plaintiff's] impairments, new impairments not previously considered, and changes in the way we evaluate mental health and musculoskeletal impairments." (*Id.*)

The ALJ then moved to the five-step process and concluded that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "lumbar degenerative disc disease/spondylosis, bilateral knee degenerative joint disease status post-right knee arthroscopy, obesity, chronic pain syndrome, bipolar disorder, and post-traumatic stress disorder ('PTSD')." (*Id.*

at 18.)[1]  Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing.  (*Id.* at 19.)  Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b).  The claimant is able to perform work that does not require climbing ladders, ropes, or scaffolds.  The claimant is able to frequently balance.  The claimant is able to occasionally climb ramps and stairs, and occasionally kneel, crouch, stoop, and craw.  The claimant is able to frequently reach overhead bilaterally.  The claimant is able to perform work that allows her to avoid concentrated exposure to extreme cold and humidity.  The claimant is able to perform work that allows her to avoid even moderate exposure to hazards as defined by the Dictionary of Occupational Titles (DOT).  The claimant is able to perform simple, routine, repetitive tasks in a work environment free of fast paced production requirements involving only simple work related decisions with few if any workplace changes.  The claimant is able to perform work that does not require contact with the public.  The claimant is able to have occasional superficial contact with co-workers; and nothing involving team tasks.

(*Id.* at 21.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 23.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Dr. M. Goodrich, M.D., state agency medical consultant (generally "persuasive"); (2) Dr. S. Brodsky, D.O., state agency medical consultant (generally "persuasive"); (3) Dr. L. Mogrovejo, Ph.D., state agency psychological consultant (generally "persuasive"); and (4) Dr. David Rovno, M.D., state agency psychological consultant (generally "persuasive").  (*Id.* at 25-26.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff had no past relevant work, Plaintiff was capable of performing jobs that

---

[1] The ALJ also noted that Plaintiff presented evidence of headaches, marijuana use, gastroesophageal reflux disease, thyroid disorder, and fibromyalgia but found that these impairments were not severe.  (AR at 18-19.)

exist in significant numbers in the national economy, including production assembler, small products assembler I, and small products assembler II. (*Id.* at 26-27.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 27.)

IV. Discussion

Plaintiff raises two issues on appeal: (1) whether "[t]he ALJ failed to adequately assess the mental health prior administrative medical findings"; and (2) whether "[t]he ALJ failed to adequately develop the record with mental health opinion evidence." (Doc. 12 at 1.) As a remedy, Plaintiff seeks a remand for a new hearing. (*Id.* at 10.)

A. **Medical Opinion Evidence**

1. Standard Of Review

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations apply to applications filed on or after March 27, 2017, and are therefore applicable here. The new regulations provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency. . . .

20 C.F.R. § 416.920c(a).[2] Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

---

[2] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider. *Id.* § 416.920c(c).

- 5 -

medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up). Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors. . . ." *Id.*

    2. <u>Dr. Mogrovejo's Opinion</u>

Dr. Mogrovejo, a non-examining psychological consultant, asserted that *Chavez* applied to Plaintiff's second disability application because there were "[n]o changed circumstances" and that Plaintiff's diagnosis of PTSD as stated in her second application "[was] programmatically the same" as Plaintiff's diagnoses in her first application. (AR at 146-47.) Dr. Mogrovejo also opined that Plaintiff had the following social limitations: Plaintiff's "ability to interact appropriately with the general public" was "[m]oderately limited," whereas Plaintiff's "ability to ask simple questions or request assistance," "ability to accept instructions and respond appropriately to criticism from supervisors," "ability to

get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness" were "[n]ot significantly limited." (*Id.* at 151.)

### 3. Dr. Rovno's Opinion

Dr. Rovno reached the same conclusions as Dr. Mogrovejo regarding *Chavez*, finding "[n]o change of circumstances" from Plaintiff's initial application in 2016 to Plaintiff's second application in 2019. (*Id.* at 165.) Dr. Rovno also reached the same conclusions as Dr. Mogrovejo regarding Plaintiff's social-interaction limitations—Dr. Rovno found a moderate limitation in Plaintiff's "ability to interact appropriately with the general public" and no significant limitation as to the other functional areas. (*Id.* at 170.)

### 4. The ALJ's Evaluation Of Dr. Mogrovejo's And Dr. Rovno's Medical Opinions

The ALJ discussed Dr. Mogrovejo's opinion in tandem with Dr. Rovno's opinion. (*Id.* at 25-26.) The ALJ deemed Dr. Mogrovejo's and Dr. Rovno's opinions "persuasive," albeit with some caveats. (*Id.*) The ALJ's full rationale was as follows:

> They opined the claimant has the ability to perform work having no more than occasional contact with the public, coworkers, and supervisors. They considered the claimant's symptoms and had the opportunity to review the medical evidence available at the time. They also are familiar with the Social Security Act and related rules and regulations. Moreover, their opinions are generally consistent with the contemporaneous medical evidence, which shows treatment has remained conservative with medication, which she found helpful. Despite her reported mental health difficulties and mental status examination reports documenting depressed mood, such reports otherwise consistently document normal observations like calm presentation, logical thought processes, unremarkable stream of thought, appropriate affect, good memory, often good concentration, often good insight, and good judgment. However, evidence at the hearing level shows the claimant is more limited than they opined. Otherwise, the opinion of the DDS psychological consultants is persuasive.

(*Id.* at 25-26, cleaned up.)

…

…

5. The Parties' Arguments

Plaintiff argues that the ALJ's evaluation of the opinions of Drs. Mogrovejo and Rovno was "grossly insufficient to permit meaningful review." (Doc. 12 at 5-6.) According to Plaintiff, although "the ALJ cited general consistency (*i.e.* between the opinions and records showing calm presentation, logical thought processes, unremarkable stream of thought, appropriate affect, good memory, often good concentration, often good insight, and good judgment) . . . there was no consistency analysis for whatever the ALJ saw in the PAMFs as inconsistent with the record and warranting a different mental RFC and . . . there was no supportability analysis." (*Id.* at 6.)

The Commissioner disagrees and defends the sufficiency of the ALJ's rationale. (Doc. 13 at 8-11.) As a threshold matter, the Commissioner argues that "the ALJ was not required to explicitly discuss both supportability and consistency . . . [and was] free to discuss 'consistency' that speaks to both the factors of supportability and consistency. There is no talismanic language or rhetorical device that an ALJ must use when evaluating the factor; ALJs are only required to explain how they considered them." (*Id.* at 8-9.) On the merits, the Commissioner contends there is substantial evidence to support the ALJ's evaluation of consistency because: (1) "the ALJ specifically noted that 'their opinions are generally consistent with the contemporaneous medical evidence, which shows treatment has remained conservative with medication, which she found helpful'"; and (2) "[d]espite her reported mental health difficulties and mental status examination reports documenting depressed mood, such reports otherwise consistently document normal observations like calm presentation, logical thought processes, unremarkable stream of thought, appropriate affect, good memory, often good concentration, often good insight, and good judgment." (*Id.* at 9-10, cleaned up.) As for supportability, the Commissioner contends that substantial evidence supports the ALJ's finding that "[Dr. Mogrovejo's and Dr. Rovno's] assessments [were] supported by their review of the record." (*Id.* at 10.) Specifically, the Commissioner notes that the ALJ stated that "Dr. Mogrovejo and Dr. Rovno 'considered the claimant's symptoms and had the opportunity to review the medical evidence available

at the time. They also are familiar with the Social Security Act and related rules and regulations.'" (*Id.*, citing AR at 25-26.)

In reply, Plaintiff argues that the ALJ's consistency and supportability analysis was impermissibly "pro forma." (Doc. 14 at 1-2.) As for consistency, Plaintiff argues that the Commissioner only cited "evidence documenting that Plaintiff's treatment remained allegedly-conservative with improvement on medication" and failed to explain how this evidence allowed the ALJ to find more-restrictive mental limitations than Drs. Mogrovejo and Rovno. (*Id.* at 2-3, cleaned up.) As for supportability, Plaintiff argues that "[the Commissioner] has not alleged what specific evidence the ALJ cited to support the conclusion that the PAMFs were supported." (*Id.* at 2.)

    6. <u>Analysis</u>

As an initial (and dispositive) matter, any error in the ALJ's evaluation of Dr. Mogrovejo's and Dr. Rovno's opinions was harmless. Under Ninth Circuit law, a district court "may not reverse an ALJ's decision on account of an error that is harmless," and "[t]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations and internal quotation marks omitted). Here, although the ALJ concluded that the opinions of Drs. Mogrovejo and Rovno were persuasive in part, the ALJ did not find their opinions fully persuasive because the "evidence at the hearing level shows [Plaintiff] is more limited than they opined." (AR at 26.) The ALJ then included, in the RFC, mental limitations that were *more* restrictive than the limitations to which Drs. Mogrovejo and Rovno opined. As noted, the ALJ concluded that Plaintiff would be wholly unable to perform work that requires contact with the public, would be wholly unable to perform team tasks, and could have only occasional, superficial contact with co-workers. (*Id.* at 21.) In contrast, Drs. Mogrovejo and Rovno both opined that Plaintiff could "interact appropriately with the general public," albeit with moderate limitations, and would not have any significant limitations in her "ability to get along with coworkers or peers without

distracting them or exhibiting behavioral extremes." (*Id.* at 151, 170.)[3] Reversal is not warranted under these circumstances. *See, e.g., Petty v. Colvin*, 2014 WL 1116992, *17 (D. Ariz. 2014) ("Plaintiff has not cited any authority indicating that an ALJ cannot moderate 'the full adverse force of a medical opinion' in a manner that is more favorable to a claimant.") (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)).

In an abundance of caution, the Court also clarifies that it finds no error in the merits of the ALJ's analysis. As noted, "[t]he agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Woods*, 32 F.4th at 792 (cleaned up). Here, although the ALJ did not use both magic words, the Court is able to reasonably discern from the relevant paragraph of the ALJ's opinion that the ALJ considered both factors—the ALJ expressly noted that both doctors "had the opportunity to review the medical evidence available to them" and that both doctors' opinions were "generally consistent with the contemporaneous medical evidence." (AR at 25-26.) *See generally Woods*, 32 F.4th at 793 n.4 ("The ALJ described Dr. Causeya's opinion as 'not supported by' the record, but the ALJ plainly did not intend to make a supportability finding . . . . Rather, the ALJ meant only that Dr. Causeya's opinion was inconsistent with other record evidence. Although the ALJ's meaning here is clear from context, to avoid confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision."); *Townsend v. Comm'r of Soc. Sec. Admin.*, 2022 WL 3443678, *5 (D. Ariz. 2022) ("One of the ALJ's reasons for discrediting Dr. Saperstein's opinions was that 'the provider's own limited treatment notes fail to identify any abnormal findings to support such extreme limitations.' The Court construes this as an invocation of the supportability factor . . . .").

The ALJ's conclusions as to each factor were supported by substantial evidence. As for consistency, the ALJ concluded that Dr. Mogrovejo's and Dr. Rovno's opinions were

---

[3] Similarly, although Drs. Mogrovejo and Rovno both concluded that *Chavez* applied (a determination that, if adopted, would have resulted in the denial of Plaintiff's second application under *res judicata* principles), the ALJ disagreed with that determination and considered Plaintiff's second application on the merits. (*Id.* at 16.)

- 10 -

"generally consistent with the contemporaneous medical evidence, which shows treatment has remained conservative with medication, which [Plaintiff] found helpful. Despite her reported mental health difficulties and mental status examination results documenting depressed mood, such reports otherwise consistently document normal observations like calm presentation, logical thought processes, unremarkable stream of thought, appropriate affect, good memory, often good concentration, often good insight, and good judgment." (AR at 26.) As a factual matter, these assertions were supported by substantial evidence, as the cited medical records indeed reflect that Plaintiff reported improvement from conservative medication and was consistently described by medical providers as calm, logical, coherent, and pleasant. (*Id.* at 617, 619, 622, 626, 788, 796, 797.) It was rational for the ALJ to conclude that such observations were generally consistent with Dr. Mogrovejo's and Dr. Rovno's opinions, which portrayed Plaintiff as not having any significant limitations in several areas related to her ability to engage in social interaction. Although Plaintiff denigrates the ALJ's analysis as "pro forma" and suggests that "the ALJ's reasoning is not . . . traceable" (Doc. 14 at 2), the Ninth Circuit's "cases do not require ALJs . . . to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Here, the ALJ adequately scrutinized Dr. Mogrovejo's and Dr. Rovno's opinions under the consistency factor.

For similar reasons, the ALJ adequately addressed the supportability factor. Drs. Mogrovejo and Rovno each provided a comprehensive summary of the evidence they had reviewed before formulating their opinions (AR at 138-47, 161-70), and those summaries included the same pieces of evidence the ALJ identified as providing support for their opinions pursuant to the consistency factor. *Cf. Shaun H. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 2955243, *5 (D. Or. 2022) ("The ALJ reasonably evaluated the prior administrative findings of the three state agency medical consultants. Regarding supportability, the ALJ noted that all the state agency medical consultants supported their findings with the medical evidence available at the time that the consultants prepared their reports. The ALJ further found that Dr. Johnson and Dr. Davenport's reports were more

persuasive under the supportability factor because they reviewed all the medical evidence that spanned the relevant period at issue from October 2011 through December 2017."). *See generally Ashley A. V. v. Kijakazi*, 2023 WL 3604460, *4 (D. Idaho 2023) (noting that "the evidence relied on by the consultants could have considerable overlap with the evidence cited by the ALJ as being consistent with their opinions" but concluding that the ALJ erred when evaluating the supportability factor in relation to a particular opinion from a state agency consultant because, unlike here, the ALJ's decision lacked "any reasoning . . . explaining how the ALJ found the consultants' opinions persuasive in light of the evidence they cited and their explanations"). It was rational for the ALJ to conclude that Dr. Mogrovejo's and Dr. Rovno's opinions regarding Plaintiff's limitations were supported by the evidence they referenced in their opinions. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.") (citation omitted).

Plaintiff's arguments to the contrary are unavailing. In large part, Plaintiff relies on cases that construed the old regulations and/or cases that involved dissimilar facts, such as an ALJ who formulated the plaintiff's RFC "without a physical functional assessment or opinion from any other medical source," *Rangel v. Acting Comm'r of Soc. Sec.*, 2017 WL 4296667, *17 (D. Ariz. 2017), or an ALJ who "made a determination based on his own interpretation of . . . raw medical evidence," *Cortez v. Colvin*, 2016 WL 3541450, *5 (E.D. Cal. 2016). Nor is the result here inconsistent with *Lewis v. Comm'r of Soc. Sec.*, 625 F. Supp. 3d 942 (D. Ariz. 2022), where the ALJ wholly failed to consider a critical piece of evidence—that the plaintiff had failed a stress test—when "determining the persuasiveness, support and consistency of [a medical source's] opinion." *Id.* at 950.

…

…

…

…

- 12 -

B. **Development Of The Record**

1. Standard Of Review

The claimant has the burden of proving disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). However, under 42 U.S.C. § 421(h)(1), "[a]n initial determination" of disability:

> shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure . . . in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

*Id.*

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "In cases of mental impairments, this duty is especially important." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citation omitted).

"The ALJ assesses a claimant's RFC based on all the relevant evidence in the case record. The ALJ must consider both the medical evidence and descriptions and observations of the claimant's limitations from the claimant's impairment(s), including limitations that result from the claimant's symptoms, such as pain, provided by the claimant, family, friends, and other people. The RFC assessment must contain a thorough

discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate. In other words, the ALJ must take the claimant's subjective experiences of pain into account when determining the RFC." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (cleaned up). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154.

It is the ALJ's province to translate and incorporate medical findings into an RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). But "an RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

2. The Parties' Arguments

Plaintiff argues that "[t]he ALJ failed to adequately develop the record with mental health opinion evidence." (Doc. 12 at 6.) Plaintiff contends that "in conducting her analysis under 42 U.S.C. § 421(d), the ALJ found very significant flaws in Dr. Mogrovejo['s] and Dr. Rovno's analyses" and "found an RFC very different from the opinions based on a very different reading of the record." (*Id.* at 8-10.) According to Plaintiff, "the ALJ should have obtained a proper opinion to supplement the unsupported opinions of Dr. Mogrovejo and Dr. Rovno before determining Plaintiff's mental RFC." (*Id.* at 10.)

In response, the Commissioner argues that "the ALJ properly assessed the evidence and there was no requirement to further develop the record." (Doc. 13 at 11, capitalization omitted.) More specifically, the Commissioner argues that because the evidence in the record "was neither ambiguous nor inadequate to allow for proper evaluation of Plaintiff's impairments," the ALJ was under no obligation to further develop the record. (*Id.* ["[T]here was abundant evidence in the record (over 1,030 pages)."]) In response to

Plaintiff's contention that the ALJ should have sought medical opinions beyond those of Drs. Mogrovejo and Rovno, the Commissioner argues that (1) "Plaintiff fails to show that there was additional evidence relevant to her case which could have changed [the doctors'] assessments, or the ALJ's RFC"; (2) "Plaintiff also fails to show how any additional evidence could have shown that she was unable to perform work within the already very reduced RFC that the ALJ assessed"; and (3) "the evidence shows limited mental health treatment during the relevant period, calling into question whether her impairments are as severe as she alleged, and further supporting the assessments of Dr. Mogrovejo and Dr. Rovno." (*Id.* at 11-12, cleaned up.) The Commissioner also argues that "the fact that time elapsed and subsequent evidence entered the record does not preclude an ALJ from relying on [State Agency expert] opinions." (*Id.*) Finally, the Commissioner argues that "the Social Security Act places the burden squarely on a disability applicant to produce evidence in support of disability" and that "[b]y arguing that it fell to the ALJ to seek out evidence of disability, Plaintiff improperly shifts her burden to the agency." (*Id.* at 13, cleaned up.)

Plaintiff makes three points in reply. (Doc. 14 at 3.) First, Plaintiff argues that the ALJ had a duty to develop the record by supplementing Dr. Mogrovejo's and Dr. Rovno's assessments because "the ALJ seemed to believe that there was evidence that could have changed Dr. Mogrovejo's and Dr. Rovno's assessments." (*Id.*, citing AR at 21, 151, 170.) Second, Plaintiff argues that "it is unclear how the ALJ actually relied on the PAMFs." (*Id.*) Third, Plaintiff argues that because "[the Commissioner] does not address Plaintiff's arguments concerning the ALJ's separate duties under 42 U.S.C. § 421(d) and the principles of *Cancanon v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04319-PHX-GMS, 2019 WL 1099088, at *5 (D. Ariz. Mar. 8, 2019)," the Commissioner waived these arguments. (*Id.*)

        3.    <u>Analysis</u>

An ALJ's duty to develop the record may arise when the medical sources upon whom the ALJ relies assert that the evidence in the record is ambiguous or inadequate or when the ALJ herself states that the evidence in the record is ambiguous or inadequate.

*Tonapetyan*, 242 F.3d at 1150 ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (citation omitted); *Lockwood v. Comm'r Soc. Sec. Admin.*, 397 F. App'x 288, 290 (9th Cir. 2010) ("The ALJ's duty to obtain medical records from Dr. Loeb was not triggered because the evidence in the record was not ambiguous, the ALJ did not find the record inadequate, and the ALJ did not rely on the opinion of any medical experts who concluded the evidence was ambiguous or inadequate."). Here, neither Dr. Mogrovejo nor Dr. Rovno suggested that the record was ambiguous or inadequate. (AR at 146-47 [Dr. Mogrovejo]; *id.* at 170 [Dr. Rovno, concluding that the "[i]nitial assessment is consistent with [the medical evidence of record] and is supported"].) Additionally, nowhere in the ALJ's decision did the ALJ suggest that the evidence in the record regarding Plaintiff's mental health impairments was ambiguous. To the contrary, various passages in the ALJ's extensive decision suggest that the ALJ viewed the record as more than adequate to evaluate the symptoms associated with Plaintiff's mental impairments.[4]

At bottom, Plaintiff's claim of inadequate development stems from the fact that new evidence—specifically, Plaintiff's hearing testimony—came into existence after Drs. Mogrovejo and Rovno rendered their opinions, which caused the ALJ to conclude that Plaintiff was more limited than Drs. Mogrovejo and Rovno had viewed her. (*Id.* at 25-26 ["[T]heir opinions are generally consistent with the contemporaneous medical evidence . . . . However, evidence at the hearing level shows the claimant is more limited than they opined. Otherwise, the opinion of the DDS psychological consultants is persuasive."].)

---

[4] *See, e.g., id.* at 20 ("Mental status examination reports mention dysphoric or depressed mood, but otherwise consistently well-groomed appearance, calm presentation, good eye contact, normal speech, and appropriate affect."); *id.* ("The claimant testified that she has difficulty with concentration and completing tasks. However, she also reads novels, drives, and uses her phone for various activities, including grocery shopping and managing appointments. Mental status examination reports at times mention fair concentration, but otherwise they consistently document good concentration, normal speech, logical thought processes, and unremarkable stream of thought."); *id.* at 20-21 ("Mental status examination reports also consistently document appropriate dress, well-groomed appearance, calm presentation, good eye contact, normal level of alertness, normal speech, appropriate affect, often good insight, and good judgment.").

But this is not an unusual occurrence in the Social Security process, as "[t]here is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020). What matters is that, "[a]t the time they issued their opinions, the non-examining experts had considered all the evidence before them, satisfying the requirements set forth in 20 C.F.R. § 404.1527(c)(3)." *Id.* It would be one thing if "the ALJ received additional medical evidence that in her opinion may change the expert's finding." *Garner v. Saul*, 805 F. App'x 455, 458 (9th Cir. 2020).[5] But here, where the ALJ simply credited some of Plaintiff's hearing testimony in a manner that was favorable to her, the Court cannot conclude that the ALJ had an independent duty to further develop the record by soliciting additional opinion evidence. By taking Plaintiff's "symptom testimony into account in determining the RFC," the ALJ did what Ninth Circuit law requires. *Laborin*, 867 F.3d at 1153-54.

Further, the ALJ left the record open for 30 days after Plaintiff's hearing. (AR at 40-42, 81-82.) Thus, even if the ALJ's duty to develop the record was triggered, the ALJ satisfied that duty. *Tonapetyan*, 242 F.3d at 1150 ("The ALJ may discharge this duty in several ways, including . . . keeping the record open after the hearing to allow supplementation of the record."); *Lockwood*, 397 F. App'x at 290 ("Even if the ALJ's duty to obtain records from Dr. Loeb were triggered, the ALJ satisfied the duty by giving Lockwood's attorney the opportunity to obtain the records."). During that period, Plaintiff did not supplement the record with additional supporting medical evidence.

…

…

…

…

---

[5] Medical evidence "includes copies or photocopies of medical records, doctors' reports and recent test results." *Medical Evidence*, SOC. SEC. ADMIN. (last visited Sept. 22, 2023), https://www.ssa.gov/help/iClaim_medicalEvidence.html#:~:text=This%20includes%20copies%20or%20photocopies,meet%20our%20definition%20of%20disability.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 27th day of September, 2023.

Dominic W. Lanza
United States District Judge